IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY SESSION, 1998

FILED

March 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9705-CR-00189 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JAMES C. BEASLEY, JR., |
| ALVIN K. WALKER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (AGGRAVATED ROBBERY) |

FOR THE APPELLANT:

A.C. WHARTON
District Public Defender

WALKER GWINN
Assistant Public Defender

MICHAEL JOHNSON
Assistant Public Defender

JUANITA PEYTON
Assistant Public Defender
Criminal Justice Center, Suite 201
201 Popler Avenue
Memphis, TN  38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

DEBORAH A.  TULLIS
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

JOHN W. PIEROTTI
District Attorney General

JANET L.  SHIPMAN
Assistant District Attorney General
Criminal Justice Center, Suite 301
201 Poplar Avenue
Memphis, TN  38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Alvin K. Walker, appeals as of right from his conviction for aggravated robbery following a jury trial in the Shelby County Criminal Court. The only issue Defendant raises in this appeal is the sufficiency of the evidence, specifically as to the eyewitness testimony identifying the Defendant as committing the offense. We affirm the judgment of the trial court.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict

approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Carl Johnson, known as "Chili," testified that he was working for the federal government at the Defense Depot in Memphis and often frequented a place called Joe's Pool Hall. On March 6, 1996, Chili was at Joe's Pool Hall around 11:20 p.m. playing craps with about twelve (12) other people in a back room. A man wearing a mask came into the room with a shotgun and grabbed a man, "Grady," who was seated in the room. This masked man put the gun to Grady's head and told him to "[D]rop it." Everyone broke up and started to run around the pool room. Chili tried to run out the front door, but was stopped by a man holding a handgun. This second gunman was not wearing a mask. He pointed the gun at Chili and told everyone to get back. Chili recognized the unmasked gunman as "Little Boo," a nickname for the Defendant. Chili stated that while he was not personally acquainted with Defendant, he had seen him nearly every day at Joe's Pool Hall.

After Defendant pointed the pistol at Chili, he told everyone to, "[T]ake their money and put it out." When Defendant saw that there was not a lot of money laying on the ground he said, "Well, I know it's more money here than this here, so everybody get out [sic] their clothes." The masked gunman then went around the room pointing the gun at people while they removed their clothes and threw them in a pile. Defendant asked the owner of the pool room for trash bags. When the owner declined, Defendant threw the trash out of the garbage can and put all the clothes inside it.

Chili stated that he was wearing a leather coat and had seven hundred dollars ($700.00) in cash and a seven thousand dollar ($7,000.00) check from the government in his wallet. Also, Chili stated that he had his car and house keys and all his personal identification in the pocket of his pants which were thrown into the trash can and then taken in the robbery by Defendant and the masked gunman. Before Defendant and the masked gunman left, Defendant told some of the people lying on the floor that they could pick their money up. Two of these people included the owner of the pool hall and a man known only to Chili then as "Six-Nine." Chili was able to identify Six-Nine at trial as Antonio Taylor. As Defendant and the masked gunman were leaving the pool hall, Defendant told everyone to get down on the floor and then shot his nine millimeter gun six (6) or seven (7) times up into the ceiling. After the police arrived on the scene, Chili identified Defendant as one of the men who committed the robbery.

The following day Chili had an appointment to talk with the police at two or three o'clock. Prior to his appointment, Chili returned to Joe's Pool Hall to get his car. After his wife dropped him off and pulled away, Chili got in his car and was preparing to back out when Defendant pulled up in a yellow Camaro. Defendant opened his car door and was holding a pistol, and he threatened Chili stating, "If you and those folks go down and swear out a warrant on me, I'm going to kill you." Chili left the pool hall and drove to the police station where he identified Defendant from a set of photographs as the one who had committed the robbery and threatened him if he made an identification to the police.

Officer Jerry Collard testified that he was called to Joe's Pool Hall on March 6, 1995, to investigate an aggravated robbery. While investigating, Chili identified Defendant as one of the assailants.

Sergeant Carl Carter went to the Summer Motel on March 8 in Memphis to arrest the Defendant. While Sergeant Carter was at the motel, he collected evidence and photographed Defendant's room at the motel. Inside the bedroom, underneath the springs of the mattress, Sergeant Carter found a nine millimeter semi-automatic handgun.

Antonio Taylor testified for the defense that he lives near Joe's Pool Hall and was present there on March 6, 1996. Taylor was in the back room watching the craps game when two (2) men came in with a gun telling everybody to lay down. One man was wearing a mask and both were carrying weapons. Taylor first saw the man not wearing a mask because he pointed his weapon in Taylor's face and told him, "Empty your pockets." Taylor laid on the ground with his arms over his head and his eyes closed. Someone shot in the air and Taylor thought he had been shot in the head. After ten (10) or fifteen (15) minutes, everyone was lying down on the ground and the assailants left the pool hall. Taylor believed that Chili was in the back of the pool hall, in a side room, when the robbery occurred.

Taylor stated that while he could not identify the man who held a gun to his head, he was certain that it was not the Defendant. Taylor has known Defendant since junior high school. Taylor waited for the police to arrive and made a statement that he could not identify anyone. Taylor believed that the man who pointed a gun at him was nearly his height (six (6) feet, three (3) inches), with a

beard. During cross-examination, Taylor admitted that he had not told the police in his statement that anyone had pointed a gun at his head. Taylor also confirmed that he told the police that he "did not get a good look at either one of these responsible parties."

Darrell Washington was also present at Joe's Pool Hall on March 6, 1996. Washington was shooting pool when someone entered the room with a mask and sawed-off shotgun and told everyone to "Get down." People in the pool hall started running, and Washington ran through to a door where he saw a second man with a gun who told everyone to get down and to take their clothes off. Washington was scared and ran to one side and got on the floor. Washington was in the floor taking his clothes off when he turned around and looked at the second gunman. That gunman told Washington to "put your damn face in the floor," and Washington complied. While Washington could also not identify this second gunman, he was certain that it was not Defendant. Washington described this assailant as tall with a mustache. After the gunmen left, Washington immediately left and went home.

The identity of "Little Boo," the Defendant, as the assailant at the pool hall was a question of fact for determination by the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Chili testified that Defendant was one of the perpetrators of the offense at Joe's Pool Hall. Chili identified Defendant to the police in his initial statement and then identified Defendant from a set of photographs at the police station. In addition, Chili was threatened by Defendant the day following the robbery. Chili described the weapon Defendant was using to commit the robbery as a nine millimeter handgun, and Sergeant Carter testified that he found a nine millimeter handgun hidden in Defendant's room when he was arrested. While two

-6-

other witnesses testified that Defendant was not the perpetrator, this factual conflict was reconciled by the jury by weighing the credibility of each witness. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Here, it appears that the jury found the eyewitness testimony of Chili more convincing than that of the other witnesses. The testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. Strickland, 885 S.W.2d at 87. We will not reevaluate or reweigh this evidence, and this issue is without merit.

After considering the record, we conclude that there was sufficient proof to establish that the Defendant was the perpetrator of the offense. We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOSEPH B. JONES, Presiding Judge

_____
JOHN H. PEAY, Judge